51641. GEORGIA MOTOR CLUB, INC. v. FIRST NATIONAL BANK & TRUST COMPANY OF AUGUSTA.

QUILLIAN, Judge.

This appeal arose out of the following facts as set forth substantially in the brief of appellant (plaintiff below). The plaintiff maintained an account at the defendant bank on which checks were made payable to the Air Traffic Conference of America or one of the airline companies. On or about April 10, 1970, the plaintiff, through its general manager, notified the defendant bank by telephone that checks numbered 293 through 307 had been stolen in a burglary of plaintiff's main office in

Atlanta, and plaintiff gave oral instructions to stop payment on these checks. On April 13, 1970, plaintiff confirmed this oral stop payment order in writing by a letter from plaintiff's general manager to defendant's vice president and cashier. In this letter, plaintiff's general manager again reported that checks numbered 293 through 307 had been stolen in a burglary of plaintiff's main office in Atlanta and requested that stop payment notices be placed on these checks and that none of them should be honored. Plaintiff's general manager further stated that there were only two outstanding checks on this account and then reported to defendant bank the following: "I, therefore, request that only checks authorized by the undersigned by telephone or letter, whichever you require, be cleared for payments. *I might also state that checks written on this Trust* Account can only be made payable to the 'Air Traffic *Conference of America' or one of the Airline Companies.* Checks can never be made payable to an individual on this account; therefore, please do not honor. As all Georgia Motor Club checks are signed by a signature plate . . . any checks presented to you for payment and hand signed would be forged checks."

On April 21, 1970, defendant bank, through its vice president and cashier, notified plaintiff's general manager that it had received the letter of April 10, 1970 and that the defendant bank would be happy to comply with plaintiff's instructions. During the month of September, defendant bank admittedly disregarded plaintiff's stop payment order and instructions contained in the letter to defendant dated April 13, 1970 and honored and paid checks numbered 294, 297, 300, 302, 305 and 307 drawn on plaintiff's account totaling $1,243.56. The six checks which were honored were not signed by a signature plate, nor did defendant bank obtain the authorization of plaintiff's general manager prior to paying these items. Defendant bank has stated in the affidavit of its vice president and cashier that during the first week of October, 1970, it mailed to plaintiff a monthly statement reflecting all transactions in the checking account. On or about January 11, 1971, plaintiff informed defendant bank that it had paid the six checks in

question over plaintiff's stop payment and requested that defendant bank reimburse plaintiff.

The plaintiff brought suit in the amount of $1,245.56 for the defendant bank's failure to honor the stop payment order. The defendant bank answered setting forth as its main defense the fact it did not receive notice within 60 days after the plaintiff was furnished a bank statement evidencing payment of the checks in question. Both sides filed motions for summary judgment which duly came on for hearing. The trial judge granted the defendant's motion and denied the plaintiff's motion. Appeal was taken to this court. *Held:*

1. Code Ann. § 109A-4 — 406 (4) (Ga. L. 1962, pp. 156, 305; 1963, pp. 188, 192) on which the defendant relies, provides as follows: "Without regard to care or lack of care of either customer or the bank (a) a customer who does not within 60 days (b) from the time the statement and items are made available to the customer (subsection (1)) discover and report his *unauthorized signature* or *any alteration on the face of the item* is precluded from asserting against the bank such *unauthorized signature* or *alteration;* and a customer who does not within one year from the time the statement and items are made available to the customer (subsection (1)) discover and report any alteration on the back of the item or any unauthorized indorsement is precluded from asserting against the bank such alteration or unauthorized indorsement." (Emphasis supplied.) This section is limited to two and only two types of claims by a customer (1) unauthorized signature (2) any alteration.

The complaint alleged that the signatures were unauthorized (as well as the payees) but recovery is sought for violation of the stop payment order. In *Bank of Thomas County v. Dekle,* 119 Ga. App. 753 (168 SE2d 834), it was pointed out that even though recovery for certain unauthorized signatures on the front of a check might be barred after 60 days, this would not prevent recovery on those same checks for unauthorized signatures on the back as to which a one year limit was applicable.

Here the plaintiff could not recover for an unauthorized signature or for any alteration after 60

days. However, Code Ann. § 109A-4 — 406 (4) (Ga. L. 1962, pp. 156, 305; 1963, pp. 188, 192) has no specific application to Code Ann. § 109A-4 — 403 (Ga. L. 1962, pp. 156, 304) and would not serve to preclude recovery for payment of an item made contrary to a binding stop payment order.

The fact that the checks contained unauthorized signatures would not involve the basis of this suit which is the failure of the bank to comply with its customer's request to stop payment. "When a stop payment order is properly given, a bank is liable to its customer for the damages sustained by him in the event the bank thereafter makes improper payment on the stopped instrument." 3 Anderson, Bank Deposits and Collections, UCC 313, § 4-403.6. See UCC, Official Code Comment, § 4-403 (2).

It was error to grant the defendant's motion for summary judgment.

2. Here although error is enumerated with regard to the denial of appellant's motion for summary judgment no application for review was sought nor was such obtained. Prior to July 1, 1975 and under the Act of 1968 amending Section 1 of the Appellate Practice Act (Ga. L. 1968, pp. 1072, 1073), the denial of a motion for summary judgment would not be considered absent a certificate of immediate review. This was true when the denial was enumerated as error on cross appeal (*Carroll v. Campbell,* 226 Ga. 700 (177 SE2d 83)), or on main appeal even though accompanied by a judgment which was final and reviewable. *Southernaire Corp. v. Worley,* 230 Ga. 486, 488 (197 SE2d 726). The controlling language of the statute then read: ". . . an order denying summary judgment is not subject to review by direct appeal *or otherwise,* unless within 10 days of the order of denial the trial judge certifies that the order denying summary judgment as to any issue or as to any party should be subject to review. . ." (Emphasis supplied.) CPA § 56 (h) as amended, Ga. L. 1966, pp. 609, 660; 1967, pp. 226, 238 (Code Ann. § 81A-156 (h)). Hence, in any posture a denial was nonreviewable absent a certificate. *Campbell v. Carroll,* 121 Ga. App. 497 (174 SE2d 375).

The statute concerning review of summary

judgments now reads: "An order denying summary judgment shall be subject to review by direct appeal in accordance with the provisions of section 1 (a) (2) of the Act comprehensively and exhaustively revising appellate and other post trial procedures, approved February 19, 1965 (Ga. L. 1965, p. 18), as amended." CPA § 56 (h) as amended, Ga. L. 1975, pp. 757, 759. By omitting the language "or otherwise" the legislature obviously intended to modify the law to now permit review of the denial of a summary judgment without the necessity of making application for interlocutory appeal where there is a final judgment which is the basis of the appeal. On direct appeal such application is, of course, mandatory. CPA § 56 (h), as amended (Code Ann. § 81A-156 (h); Ga. L. 1975, pp. 757, 759).

Construing the Act thusly, we therefore consider the question of whether the trial judge properly denied the appellant's motion.

3. The plaintiff as movant established that a written stop payment order was sent to and received by the defendant bank so as to afford the bank a reasonable time to act on it; that within six months the bank violated the order by paying certain checks; that payments were made to certain individuals not authorized to receive them and as a result the plaintiff suffered a loss in the amount of $1,243.56. This established the plaintiff's right to recover as a matter of law. See Uniform Commercial Code § 109A-4 — 403 (Ga. L. 1962, pp. 156, 304). Hence, it was error to deny the plaintiff's motion for summary judgment.

*Judgment reversed. Deen, P. J., and Webb, J., concur.*

ARGUED JANUARY 15, 1976 — DECIDED FEBRUARY 9, 1976.

*Nixon, Yow, Waller & Capers, John B. Long, Steven J. Martin,* for appellant.

*Hull, Towill, Norman, Barrett & Johnson, Patrick J. Rice,* for appellee.