## 20145. LEDGER-ENQUIRER COMPANY *v.* BROWN.
## 20146. LEDGER-ENQUIRER COMPANY *v.* GRIMES.

ARGUED SEPTEMBER 8, 1958—DECIDED OCTOBER 10, 1958.

*Foley, Chappell, Kelly & Champion,* for plaintiff in error.

*Fort & Williams, James H. Fort, Al Williams,* contra.

ALMAND, Justice. Carlton Brown and Al Grimes filed separate suits against the Ledger-Enquirer Company, publisher of a newspaper, wherein each sought the recovery of damages growing out of the publication in its newspaper of the following item:

"TWO MEN BOUND TO HIGHER COURT

IN AUTO THEFT

"Lumpkin, Ga. Dec. 5—Carlton Brown, a Lumpkin lawyer, and Al Grimes, employed at the Singer Co., were injured when the car in which they were riding overturned near the Stewart-Quitman County line on State Highway 27 Sunday.

"Both men were taken to the Barbour County Hospital in Eufaula. Brown suffered a deep jagged cut on his right leg above the knee, 3 broken ribs, collar bone broken and other cuts and bruises. Grimes had his right leg broken."

It was alleged that the words in the headline of the article referred to the plaintiffs and implied and conveyed by direct charges and insinuation, and was so understood by the readers of the newspaper, that the plaintiffs were "falsely charged" with stealing an automobile, a crime constituting a felony. The defendant filed its general demurrer in both cases, one of the grounds of the demurrer being that the allegations of the petitions affirmatively showed that the writing complained of was not libelous of the plaintiffs. The demurrers were sustained and the suits dismissed. These orders on review by the Court of Appeals were reversed. *Brown* v. *Ledger-Enquirer Co.*, 97 *Ga. App.* 595 (103 S. E. 2d 616). That court, in considering and deciding the two cases in one opinion, held that, where a newspaper headline charges two unnamed persons with a crime and the body of the publication relates to an event involving two named persons, a jury question is presented as to whether the persons named in the body of the article were libelously charged with the crime mentioned in the headline. We granted a writ of certiorari.

The only question presented for our consideration is whether the two unnamed persons charged with a crime in the headline may be identified as the two plaintiffs named in the innocuous article that follows, so as to impute the commission of a crime to them. The headline is a part of the article and must be construed together with it in deciding whether the article refers to or identifies the two persons against whom the libel is directed. *Witham* v. *Atlanta Journal*, 124 *Ga.* 688(1) (53 S. E. 105, 4 L.R.A. (NS) 977); Wiley *v.* Oklahoma Press Publishing Co.; 106 Okla. 52 (233 Pac. 224, 40 A.L.R. 573). Where the plaintiff's name was not contained in the headline, the article and the headline must be construed together as one document to determine whether the newspaper article was libelous to the plaintiff. Schoenfield *v.* Journal Co., 204 Wis. 132 (235 N.W. 442). In *Constitution Publishing Co.* v. *Leathers*, 48 *Ga. App.* 429, 431 (172 S. E. 923), the court quoted with approvel from Odgers' text on "Libel and Slander," p. 140, as follows: "The defamatory words must refer to some ascertained or ascertainable person, and that person must be the plaintiff. If the words used really

contain no reflection on any particular individual, no averment or innuendo can make them defamatory. An innuendo can not make the person certain which was uncertain before." Where the words of the alleged libelous matter are so vague and uncertain that they could not have been intended to refer to any particular person, or the published words are incapable of any other construction other than they are not defamatory of the plaintiff, the petition is subject to general demurrer. See *Garland* v. *State,* 211 *Ga.* 44 (84 S. E. 2d 9). In Commercial Publishing Co. *v.* Smith, 149 Fed. 704, it was said: "A publication claimed to be defamatory must be read and construed in the sense in which the readers to whom it is addressed would ordinarily understand it. So the whole item, including display lines, should be read and construed together, and its meaning and signification thus determined. When thus read, if its meaning is so unambiguous as to reasonably bear but one interpretation, it is for the judge to say whether that signification is defamatory or not. If upon the other hand, it is capable of two meanings, one of which would be libelous and actionable and the other not, it is for the jury to say, under all the circumstances surrounding its publication, including extraneous facts admissible in evidence, which of the two meanings would be attributed to it by those to whom it is addressed or by whom it may be read." The above quotation was quoted with approval in *Constitution Publishing Co.* v. *Andrews,* 50 *Ga. App.* 116 (177 S. E. 258), where, in an action for damages by reason of an alleged newspaper libel, it was held that, if the meaning of the published article is so unambiguous as to reasonably bear but one interpretation, it is for the court to say whether that signification is defamatory or not. "Where there is no connection between the alleged libelous publication and the plaintiff, either directly or by way of colloquium, it is not error for the trial judge to decide the case as a matter of law on demurrer." *Wills* v. *Upshaw,* 95 *Ga. App.* 241, 242 (97 S. E. 2d 520). See Restatement of the Law of Torts, p. 150, § 564 (b) and p. 304, § 614. Where there is no ambiguity in the words used in the article, the question whether the plaintiff was the person defamed is one of law. Hubbard *v.* Allyn, 200 Mass. 166 (86 N. E. 356).

The petitions in these cases contain no allegations by way of colloquium or innuendo. Whether the publication is libelous of and identifies the plaintiffs as the persons libeled, depends upon the construction of the publication unaided by the allegations that the published words referred to them. *Witham* v. *Atlanta Journal,* 124 *Ga.* 688, supra. The headline of the published article informs the reader that two unnamed men have been bound to a "higher court in auto theft." The body of the article relates to an automobile accident in which the plaintiffs "were injured when the car in which they were riding overturned near the Stewart-Quitman county line on State Highway 27 Sunday," and states that they were taken to a hospital in Eufaula, Alabama, and gives a description of their injuries. The article relates to an event entirely different and is in no way connected with the headlines. Neither the headlines nor the body is ambiguous. "It is not enough, however, that the defamatory matter be actually understood as intended to refer to the plaintiff; such interpretation must be reasonable in the light of all the circumstances." Restatement of the Law of Torts, p. 150, § 564(b). To illustrate how unconnected the event related in the headlines is to the body of the article, suppose a newspaper publishes a news article with the headline, "Two Men Injured In Auto Accident Carried To Hospital," and the article is an account of the arrest of A and B for the theft of an automobile and their being bound over to a higher court. It is obvious that the body of the article does not identify A and B as being the two unnamed men in the headline who were injured in the automobile accident. We agree with the conclusion drawn by the trial judge, in his order sustaining the demurrers and dismissing the petitions, when he said: "The words alleged to be libelous appear only in the headline of the article. The headline does not identify the plaintiff in any manner whatever. The article itself must be read in order to identify the plaintiff, and upon reading the article it is obvious that the headline and the remainder of the article have no relationship one with the other. In its entirety, the article conveyed to the mind of the reader the fact that the auto theft referred to in the headline was not imputed to the plaintiff, and . . . this is the 'only construction by the reader, of which the article was reasonably susceptible.'"

The Court of Appeals erred in reversing the orders of the trial court in these two cases, and its judgment must be and is *Reversed*. *All the Justices concur, except Candler, J., who dissents.*